IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SUNIVA, INC., | Case No. 17-10837 (KG) |
| Debtor. | |
| SQN ASSET SERVICING, LLC | Adversary Proceeding No. 18-____ |
| Plaintiff, | |
| v. | |
| SUNIVA, INC. and LION POINT CAPITAL, LP, | |
| Defendants. | |

**VERIFIED ADVERSARY COMPLAINT FOR EMERGENCY
AND PRELIMINARY INJUNCTIVE RELIEF**

As and for its Verified Adversary Complaint for Emergency and Preliminary Injunctive Relief against Defendants Suniva, Inc. (the "Debtor") and Lion Point Capital, LP ("Lion Point"), Plaintiff SQN Asset Servicing, LLC ("SQN") alleges and avers as follows:

**NATURE OF THE ACTION**

1. SQN brings this action to enjoin the Debtor and Lion Point from removing, directly or indirectly, SQN's solar cell production line equipment from the facilities leased by the Debtor in Norcross, Georgia (the "Norcross Facility").

2. The removal of SQN's solar cell production line equipment from the Norcross Facility will not benefit the Debtor's estate.

3. On the contrary, the removal of SQN's solar cell production line equipment from the Norcross Facility will be detrimental to the Debtor's estate and the Debtor's creditors.

4. Specifically, removal of SQN's solar cell production line equipment from the Norcross Facility will jeopardize any potential recovery the Debtor may have from its anti-dumping countervailing duty ("AD/CVD") settlement.

5. The Debtor's ability to obtain the AD/CVD settlement proceeds is directly linked to having the solar cell production line equipment remain at the Norcross Facility. The Debtor has admitted as much in its filings with this Court (*see* the Debtor's Reply in Support of its Motion for Entry of an Order (i) Approving the Stipulation Regarding Norcross, Georgia Lease and (ii) Extending the Debtor's Time, with Consent, to Assume or Reject Norcross, Georgia Lease [Doc. 794 at 6, n. 9]).

6. Removal of the equipment would be equally, and possibly more, damaging to the Debtor's estate and the Debtor's creditors (of which SQN remains the largest) if the Debtor has determined that the viability of an AD/CVD settlement is not the basis on which it sought to extend the Norcross Facility lease, and is instead seeking a plan of reorganization [Doc. 794 at 3 ¶ 3].

7. Moreover, on information, SQN believes that Lion Point, which has provided financing to the Debtor outside the Chapter 11 estate, seeks the removal of SQN's solar cell production line equipment for improper purposes, namely, to (i) eliminate potential competition in the solar cell production industry and (ii) potentially to force SQN to sell the equipment on site for less than fair market value.

8. To be sure, according to Lion Point's filings with the United States Securities and Exchange Commission ("SEC"), Lion Point owns approximately 1,920,085 shares in Canadian Solar—one of the three largest solar companies in the world by revenue—that are valued at approximately $31,239,000(US) and constitutes Lion Point's fifth largest equity holding. Lion

Point also has an outstanding loan to Canadian Solar of approximately $14,341,000(US). Lion Point's $45 million investment in Canadian Solar stands in stark contrast to its approximately $6 million investment in the Debtor.[1]

9.  If Lion Point does not believe that an AD/CVD settlement is viable, then Lion Point should have disclosed this information in its July 10, 2018 Motion for Entry of an Order (i) Approving the Stipulation Regarding Norcross, Georgia Lease and (ii) Extending the Debtor's Time, with Consent, to Assume or Reject Norcross, Georgia Lease [Doc. 766], which specifically allows for the removal of the equipment to the detriment of the Debtor's estate and the Debtor's creditors.

## JURISDICTION AND VENUE

10. On April 17, 2017 ("Petition Date"), the Debtor filed the above-captioned voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its properties as a debtor-in-possession authorized by Sections 1107(a) and 1108 of the Bankruptcy Code.

11. This Court has jurisdiction of this adversary proceeding pursuant to Title 28, Sections 157 and 1334 of the United States Code.

12. This proceeding is a core proceeding pursuant to Title 28, Section 157(b) of the United States Code.

13. Venue is proper in this Court pursuant to Title 28, Sections 1408 and 1409 of the United States Code.

---

[1] According to Lion Point's SEC Form 13F filed quarterly since the Petition Date, Lion Point's holdings in Canadian Solar during the pendency of the Debtor's bankruptcy proceedings were as high as $60 million(US). Lion Point also had holdings of nearly $11 million(US) in a Chinese solar manufacturing company named JA Solar Holdings Co. Ltd.

14. Pursuant to Rule 7008-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), SQN consents to the entry of final orders or judgments by the Court with respect to this Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments with respect to this Complaint consistent with Article III of the United States Constitution.

**THE PARTIES**

15. The Debtor is in the business of, among other things, manufacturing and selling solar cells. The Debtor is a party to a lease of the Norcross Facility, which is nonresidential real property located at 5765 and 5775 Peachtree Industrial Boulevard, Norcross, Georgia 30092.

16. Lion Point is private investment and advisory services company located in New York, New York. Lion Point provides the Debtor-in-possession financing to the Debtor pursuant to a budget through December 2018 ("Lion Point DIP Financing"). Lion Point also provided funding of approximately $500,000 outside the Chapter 11 estate directly to the Landlord of the Norcross Facility for rent through January, 2019 (the "Lion Point Norcross Funding").

17. SQN is the largest unsecured creditor to the Debtor's estate with a claim of approximately $33,750,000. SQN provided debtor-in-possession financing to the Debtor (the "SQN DIP Financing") from the Petition Date through May, 2018 and currently owns certain solar cell production line equipment located at the Norcross Facility.

**FACTUAL BACKGROUND**

18. Since the commencement of this case, SQN alone advanced approximately $5,280,000 to the Debtor through the SQN DIP Financing.

19. The SQN DIP Financing funded the Debtor's successful trade petition before the U.S. International Trade Commission (filed April 26, 2017, the "Trade Case"), professional fees, payroll, rent, utilities and other administrative expenses through May 20, 2018.

- 5 -

20. The SQN DIP Financing concluded due to certain Events of Default by the Debtor and the expiration of the term.

21. By Agreed Orders entered on April 17 and May 3, 2018 SQN and Wanxiang American Corporation ("Wanxiang") were authorized, with the consent of the Debtor, Lion Point and the Committee of Unsecured Creditors (the "Committee"), to advertise and hold public Uniform Commercial Code Sales to be held on May 24, 2018, for the solar cell production line equipment located at the Norcross Facility.

22. SQN and Wanxiang credit bid for their respective solar cell production line equipment, the accountings for which were served on the Debtor and Committee.

23. After adjusting for the credit bid, SQN became the largest unsecured creditor to the Debtor's estate with a claim of approximately $33,750,000.

24. At the same time, Wanxiang became the second largest creditor to the Debtor's estate with a claim of approximately $12,500,000.

25. Together, SQN's and Wanxiang's unsecured claims are larger than the aggregate of all of the other unsecured creditors combined as reported on the Debtor's Schedules and Statement of Financial Affairs.

26. By Stipulation and Order dated May 3, 2018 the Court approved the debtor-in-possession financing by Lion Point pursuant to a budget through December, 2018.

27. The Lion Point Financing Stipulation entered into by the Debtor, Committee, Lion Point and SQN, specifically provides at Paragraph (b) that:

> The purpose of the LP Advances shall be (i) to fund expenses identified in the [Budget] including to accommodate and support attempts to reach an AD/CVD settlement, and (ii) … to fund … certain leases and lease-related expenses in Norcross, Georgia … for the months of June and/or July, 2018.

28. The Motion of the Debtor to approve the Lion Point Norcross Funding specifically provides at Paragraph 4 that the funding "will give the Debtor significant additional time to work towards a . . . recovery of AD/CVD funds."

29. SQN was asked by Lion Point and the Debtor to waive its right under the SQN DIP Financing Order [Doc. 171 Para. 17] to receive 100% of the Lion Point DIP Financing. SQN consented to the Lion Point Financing Stipulation provided that such funds: (i) could not be used in any manner adverse to the interests of SQN and (ii) with the understanding that the solar cell production line equipment would stay in place and the production capacity stay intact as the Debtor pursued the AD/CVD settlement for the benefit of all creditors and to fulfill the interest of the United States government in restoring domestic production capacity in the United States. A true and correct copy of the Lion Point DIP Financing Order is attached hereto as Exhibit A.

30. On July 24, 2018, in its Reply in Support of the Debtor's Motion for Entry of an Order (i) Approving the Stipulation Regarding Norcross, Georgia Lease and (ii) Extending the Debtor's Time, with Consent, to Assume or Reject Norcross, Georgia Lease [Doc. 794 at 6, n. 9], the Debtor acknowledged that if it does not have, or cannot obtain in the future, equipment to restart production at the Norcross Facility, then the absence of such equipment would have a significant adverse effect on the Debtor's ability to receive the AD/CVD settlement proceeds.

31. On August 2, 2018, the Debtor contacted SQN in writing and, contrary to the Debtor's earlier positions taken before this Court and in violation of the terms of the Lion Point DIP Financing Stipulation described in Paragraph 26 herein regarding the AD/CVD settlement and SQN's interests, demanded that SQN immediately remove its solar cell production line

#49743729 v1

equipment from the Norcross Facility. A true and correct copy of the Debtor's August 2, 2018 demand is attached hereto as <u>Exhibit B</u>.

32. In the event that SQN does not remove its solar cell production line equipment from the Norcross Facility on or before August 16, 2018, the Debtor has threatened to file eviction proceedings against SQN to forcibly remove the equipment from the Norcross Facility.

33. The Debtor did not disclose, and has not disclosed, whether it has obtained or is in the process of obtaining equipment to restart production in the future.

34. On information, SQN does not believe that the Debtor has obtained or is in the process of obtaining relevant solar equipment to restart production in the future.

35. The Debtor's demand that SQN immediately remove its solar cell production line equipment from the Norcross Facility will, by the Debtor's own admission, have a significant adverse effect on the Debtor's ability to receive AD/CVD settlement proceeds, and irreparably harm the Debtor's estate and the Debtor's creditors including SQN.

36. Further, the Debtor's recent receipt of approximately $500,000 from Lion Point outside of the Chapter 11 estate raises serious questions about whether the Debtor and Lion Point are acting (i) in the best interests of the Debtor's estate and (ii) in a manner that is adverse to the interests of SQN and inconsistent with the Debtor's fiduciary duties under Delaware law.

37. By virtue of its (i) $31,000,000 equity holdings in and (ii) $14,341,000 loan to Canadian Solar—one of the three largest solar companies in the world by revenue—Lion Point is a direct competitor of the Debtor. Indeed, Canadian Solar is Lion Point's fifth largest equity holding.

38. On July 25, 2018 and August 6, 2018, SQN offered to pay certain expenses (up to $80,692 per month, including insurance) at the Norcross Facility in order to assure that its

equipment remains at the Norcross Facility until January 31, 2019, but received no response. A true and correct copy of SQN's August 6, 2018 letter to David Baker, the Chief Restructuring Officer, is attached hereto as <u>Exhibit C</u>.

39. On information, SQN believes that the Debtor, with the assistance of Lion Point, is attempting to force SQN into selling its solar cell production line equipment in a forced scenario and below market value, while placing (unnecessarily) the Debtor's ability to recover AD/CVD settlement proceeds at substantial and significant risk.

40. The elimination of the Debtor as a competitor would directly benefit Canadian Solar and Lion Point.

## **CLAIM FOR INJUNCTIVE RELIEF**
## **11 U.S.C. § 105(a)**

41. SQN repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

42. The Court has the power to enjoin the removal of SQN's solar cell production line equipment from the Norcross Facility.

43. Section 105(a) of the Bankruptcy Code provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

44. Under Section 105(a) the Court has the authority to issue injunctive relief.

45. Section 105(a) injunctions are governed by the well-known four-factor inquiry governing the entry of an injunction under Rule 65 of the Federal Rules of Civil Procedure made applicable herein by Rule 7065 of the Federal Rules of Bankruptcy Procedure:

    (1)    the likelihood of the plaintiff's success on the merits;

    (2)    whether plaintiff will suffer irreparable injury without the injunction;

(3) the harm to others which will occur if the injunction is granted; and

(4) whether the injunction will serve the public interest.

46. The four factors applicable to the issuance or injunctive relief are factors to be balanced and not prerequisites that must be satisfied.

47. Nonetheless, all four factors weigh heavily in favor of enjoining the removal of SQN's solar cell production line equipment from Norcross Facility.

48. First, with respect to SQN's likelihood of success on the merits, the Debtor has already admitted in filings with this Court that the removal of production equipment from the Norcross Facility without replacement would, in fact, have a significant adverse effect on the Debtor's ability to recover AD/CVD settlement proceeds. Further, as a result of its admission, the Debtor is judicially estopped from taking a contrary position. Lastly, the Debtor's forced removal of the equipment without Bankruptcy Court order would not be in the ordinary course of business and, therefore, would violate Section 363(b) of the Bankruptcy Code.

49. Second, without an injunction prohibiting the removal of SQN's solar cell production line equipment from the Norcross Facility, the Debtor's estate, SQN and the Debtor's creditors will suffer irreparable harm because the AD/CVD settlement proceeds represents the only significant asset of the estate and the sole source of funds to help satisfy the claims against the Debtor's estate (including those of SQN), which the Debtor and Lion Point previously admitted in filings with this Court.

50. Third, the balance of harms, weighs heavily in favor of this Court issuing an injunction preventing the removal of SQN's solar cell production line equipment from Norcross Facility. Specifically, consistent with the Debtor's prior stipulation and positions taken in filings with the Court, the issuance of an injunction would ensure the Debtor's ability to recover the

AD/CVD settlement proceeds, which would benefit the Debtor's estate.  On the other hand, the failure to issue an injunction places the Debtor's ability to recover the AD/CVD settlement proceeds at substantial risk which, if lost, would be detrimental to the Debtor's estate and the Debtor's creditors including SQN.  Further, leaving SQN's solar cell production line equipment in the Norcross Facility while SQN pays expenses related thereto means the Debtor would benefit, and not be harmed.

51.    Fourth, granting an injunction will serve the public interest by, among other things, preserving the Debtor's ability to recover the AD/CVD settlement proceeds to benefit the Debtor's estate and preventing a direct competitor (Lion Point) from using these bankruptcy proceedings to potentially eliminate competition in the solar panel industry.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SQN Asset Servicing, LLC respectfully prays that this Court:

A.    Enter an temporary restraining order and a preliminary injunction prohibiting Defendants Suniva, Inc. and Lion Point Capital, LP from removing Plaintiff SQN Asset Servicing, LLC's solar cell production line equipment from the Norcross Facility;

B.    Enter an temporary restraining order and a preliminary injunction prohibiting Defendants Suniva, Inc. and Lion Point Capital, LP from forcing Plaintiff SQN Asset Servicing, LLC to remove its solar cell production line equipment from the Norcross Facility; and

C.    Award Plaintiff SQN Asset Servicing, LLC any further relief in its favor as may be appropriate under the circumstances including attorneys' fees and costs.

| | |
|---|---|
| Dated: August 10, 2018<br>Wilmington, Delaware | **PEPPER HAMILTON LLP**<br><br>/s/ John H. Schanne<br>David B. Stratton (DE No. 960)<br>David M. Fournier (DE No. 2812)<br>John H. Schanne, II (DE No. 5260)<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>P.O. Box 1709<br>Wilmington, Delaware 19899-1709<br>Telephone:  (302) 777-6500<br>Facsimile:  (302) 421-8390<br>E-mail:     strattond@pepperlaw.com<br>            fournierd@pepperlaw.com<br>            schannej@pepperlaw.com<br><br>-AND -<br><br>Douglas J. Lipke (Admitted *pro hac vice*)<br>**VEDDER PRICE, P.C.**<br>222 N. LaSalle Street<br>Chicago, IL  60601<br>Telephone:  (312) 609-7646<br>Facsimile:  (312) 609-5005<br>E-mail:     dlipke@vedderprice.com<br><br>*Counsel to SQN Asset Servicing, LLC* |

#49743729 v1

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2018.

                                                                      _____
                                                                      James M. Modak