# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNIVA, INC.,[1] | ) | Case No. 17-10837 (KG) |
| Debtor. | ) |  |
|  | ) | **Re: Docket Nos. 6, 24, 82, and 110** |

## FINAL ORDER AUTHORIZING SECURED POST-PETITION FINANCING
## PURSUANT TO 11 U.S.C. § 364

Upon the motion, dated April 17, 2017 [D.I. 6] (the "Motion"), as supplemented on the record before the Court, of Suniva, Inc. (in its prepetition capacity "Borrower," and in its postpetition capacity, "Debtor") in the above-referenced Chapter 11 case (the "Case"), pursuant to sections 105, 362, 363(c), 364(c), 364(d)(1), 364(e) and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, *inter alia*, entry of an interim order [D.I. 24] (the "Interim Order") and entry of a Final Order (the "Final Order"):

(i)    authorizing the Debtor to obtain secured, superpriority postpetition financing (as may be amended, supplemented, restated, or otherwise modified from time to time, only consistent with the terms of this Final Order, the "DIP Facility") consisting of a $4 million revolving credit facility, with the sum of $1,417,102 being available to the Debtor on an interim basis pursuant to the Interim Order pending entry of the Final Order, subject to the terms and conditions set forth in the Interim Order and in that certain Debtor in Possession Credit Facility Term Sheet by and among the Debtor and SQN Asset Servicing, LLC (as agent, and the financial

---

[1]    The last four digits of the Debtor's federal tax identification number is 2418.   The Debtor's corporate headquarters is located at 5765 Peachtree Industrial Blvd., Norcross, Georgia 30092.

institutions or other entities from time to time parties thereto, each as an interim lender ("SQN DIP Lenders"):

(ii)    authorizing the Debtor to execute and deliver the Debtor-in-Possession Credit Agreement (attached hereto as Exhibit A) (as may be amended, supplemented, restated, or otherwise modified from time to time, only consistent with the terms of this Final Order, the "DIP Agreement") by and among the Debtor, SQN Asset Servicing, LLC, as agent (the "DIP Agent"), and the financial institutions or other entities party to the DIP Agreement including [Lion Point Capital, LP and certain of its affiliates] (the "Lion Point DIP Lenders") and, together with such other financial institutions or entities party to the DIP Agreement, the "DIP Lenders"), and other related loan documents (collectively with all documents comprising the DIP Facility, the "DIP Financing Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Financing Documents and pursuant to the provisions of this Final Order;

(iii)    authorizing the Debtor to grant the DIP Agent and DIP Lenders allowed superpriority administrative expense claims in the Case and any successor case (as defined herein) for the DIP Facility and all obligations owing thereunder and under the DIP Financing Documents (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Loan Outstandings"), as more fully set forth in this Final Order;

(iv)    authorizing the Debtor to grant the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral");

IMPAC 5196932v.1

(v)     authorizing and directing the Debtor to accrue the principal, interest, fees, expenses and other amounts payable under each of the DIP Financing Documents as they become due (subject to the provisions of this Final Order), including, without limitation, those fees set forth in the DIP Agreement, the fees and disbursements of DIP Agent's attorneys, advisors, accountants, and other consultants, and the legal expenses of the DIP Lenders, all to the extent provided by and in accordance with the terms of the DIP Financing Documents;

(vi)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Documents and this Final Order; and

The Court having considered the Motion, the exhibits attached thereto, the DIP Financing Documents, the United States' Objection to Debtor's Motion for Interim and Final Orders Authorizing the Debtor to (A) Incur Postpetition Debt on an Emergency Basis Pending a Final Hearing; and (B) Provide Security and Other Related Relief [D.I. 106] (the "DOE Objection"), the evidence submitted or adduced and the arguments of counsel made at the final hearing held on May 19, 2017 (the "Final Hearing"); notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); the Final Hearing to consider the relief requested in the Motion having been held and concluded; the DOE Objection, and any other objections to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; it appearing to the Court that granting the relief requested (as such requested relief was modified on the record at the Final hearing) on a final basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity

IMPAC 5196932v.1

holders, and is essential for the continued operation of the Debtor's businesses; and after due

deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE

DEBTOR, DIP AGENT AND DIP LENDERS STIPULATE TO AND THE COURT HEREBY

MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*:  On April 17, 2017 (the "Petition Date"), the Debtor filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the District of Delaware (the "Court"), commencing this Case.

B.    *Debtor in Possession*.  The Debtor is continuing in the management and operation

of its businesses and properties as Debtor in possession pursuant to sections 1107 and 1108 of

the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C.

§§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue

for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409.

D.    *Statutory Committee*.  On April 27, 2017, the United States Trustee for the

District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors

in this Case pursuant to section 1102 of the Bankruptcy Code (the "Statutory Committee").

E.    *Debtor's Stipulations*.  After consultation with its attorneys and financial advisors,

the Debtor (on behalf of itself) admits, stipulates, acknowledges and agrees that (collectively,

paragraphs E(i) through E(x) below are referred to herein as the "Debtor's Stipulations"):

(i)      *Prepetition Credit Agreement*:  Pursuant to that certain Credit Agreement dated as of November 17, 2015 (as amended, modified or otherwise supplemented from time to time, the "SQN Prepetition Credit Agreement") and a Security Agreement dated as of November 17, 2015 (the "SQN Security Agreement") (and together with the SQN Prepetition Credit Agreement and all other documents executed in connection therewith, the "Prepetition Credit Documents"), by and among Borrower, as borrower (the "Prepetition Borrower"), SQN Gamma, LLC, an affiliate of the DIP Lender, as agent (the "Prepetition Agent"), and certain affiliates of the Prepetition Agent as the lenders party thereto (collectively, the "Prepetition Lender"), the Prepetition Lender extended certain loans and other accommodations to the Prepetition Borrower on the terms set forth therein.

(ii)     *Prepetition Obligations*:  As of the Petition Date, the Prepetition Lender was owed approximately $49,100,000 in principal obligations (in addition, smaller facilities from SQN Venture Partners, LLC, and SQN AIF IV LP, affiliates of the Prepetition Lender, have outstanding balances of approximately $1,825,100), plus interest, fees, costs and expenses and all other "Obligations" under and as defined in the Prepetition Credit Agreement (the "Prepetition Obligations");

(iii)    *Collateral for the Prepetition Obligations*.  The Prepetition Lender asserts that the Prepetition Obligations are secured by first priority perfected security interests in certain equipment of the Debtor and a junior priority perfected security interest in substantially all other assets of the Prepetition Borrower subordinate only to the first priority security interest of Wanxiang America Corporation ("Wanxiang"), subject to any prior perfected liens of Wells Fargo Bank, N.A. ("Wells Fargo") until such time as Wells Fargo is paid in full.

(iv)    Shunfeng International Clean Energy Ltd., majority shareholder of the Debtor, guaranteed certain of the Prepetition Obligations pursuant to that certain Shareholder Guaranty dated as of November 17, 2015.

(v)    *Default by the Debtor*. The Debtor acknowledges and stipulates that the Borrower and Debtor are in default of their debts and obligations under the Prepetition Credit Documents.

F.    *Findings Regarding the Postpetition Financing*.

(i)    *Need for Postpetition Financing*. The Debtor's need to obtain credit pursuant to the DIP Facility is immediate and critical in order to maintain the Case and file and prosecute the Trade Case (as defined herein) and to enable the Debtor to continue operations (including disposing of remaining inventory and collecting receivables), to minimize the disruption of the Debtor as a "going concern," to administer and to preserve the value of its estate. The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise finance its operations requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, and the possibility for a successful reorganization. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility.

(ii)    *No Credit Available on More Favorable Terms*. Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility that comply with section 364 of the Bankruptcy Code. The Debtor has been unable to obtain

-6-

unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. The Debtor has also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien pursuant to section 364(c)(2) of the Bankruptcy Code. Within the time frame required by its need to avoid immediate and irreparable harm, financing on a postpetition basis is not otherwise available without granting the DIP Lenders, (1) perfected security interests in and liens on (each as provided herein) substantially all of the Debtor's existing and after-acquired assets (except as otherwise noted herein), (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(iii)    *Use of Proceeds of the DIP Facility*. The DIP Agent and DIP Lenders are providing the DIP Facility to fund the administration of this Case, the prosecution of that certain trade case under section 201 of the Trade Act of 1974, 19 U.S.C. § 2251 seeking United States government protection for the United States solar industry (the "Trade Case") and required operations of the Debtor during the prosecution of the Trade Case and the administration of the Debtor's Case. As a condition to the entry into the DIP Agreement and the extension of credit under the DIP Facility, the DIP Agent and DIP Lenders require, and the Debtor has agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Documents, this Final Order and the Budget (defined below and as the same may be modified from time to time) solely for (1) working capital and other general

corporate purposes, and (2) permitted payment of costs of administration of the Case (subject to the limitations of the Carve Out defined below), and as approved by the Court.

(iv)    *Sections 506(c) and 552(b)*.  Upon entry of this Final Order, in light of the DIP Facility and the DIP Agent's and DIP Lenders' agreement to subordinate their rights of payment, liens and superpriority/priority claims to the Carve Out and to also carve out from its lien and superpriority administrative claim rights claims under Chapter 5 of the Bankruptcy Code and their proceeds, as well as commercial tort claims and their proceeds, to the extent set forth below, each DIP Lender is entitled to and shall receive with respect to the DIP Collateral (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

G.    *Good Faith of the DIP Agent and the DIP Lenders*.

(i)    *Willingness to Provide Financing*.  The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to: (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Financing Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Agent and DIP Lenders are extending credit to the Debtor pursuant to the DIP Financing Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Financing Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facility and the DIP Financing Documents, and the fees to be

accrued and paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arm's length among the Debtor, DIP Agent, DIP Lenders and their respective counsel. Credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code. Accordingly, the DIP Agent and DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

H.    *Notice*. Notice of the Final Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the U.S. Trustee; (ii) the Internal Revenue Service; (iii) proposed counsel to the Statutory Committee; (vi) the Debtor's thirty (30) largest unsecured creditors; (v) counsel to Wanxiang; (vi) counsel to the DIP Agent for itself and for the SQN DIP Lenders; (vii) counsel to the Lion Point DIP Lenders; (viii) the Georgia Department of Revenue; (ix) counsel to Wells Fargo; (x) the Debtor's equity holders; (xi) all parties who have filed a notice of appearance and requested service of pleadings in the Case; (xii) applicable state and local taxing authorities; and (xiii) Shunfeng International Clean Energy Ltd. The parties have made reasonable efforts to afford the best notice possible under the circumstances and the notice provided complies with the Bankruptcy Rules and Local Rules.

IMPAC 5196932v.1

I.      The Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, effective immediately, that:

1.      <u>Financing Approved</u>.  The Motion is granted as set forth herein, the DIP Facility is authorized and approved, subject to the terms and conditions set forth in this Final Order, and the Debtor is authorized to obtain borrowings under the DIP Facility on a final basis in an amount up to $5,200,000.00.

2.      <u>Objections Overruled</u>.  All objections to the Motion or entry of this Final Order, including the DOE Objection, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.      <u>Authorization of the DIP Facility and DIP Financing Documents</u>.  The Debtor is expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and subject to the terms of this Final Order and the DIP Financing Documents, to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Financing Documents.  The Debtor is hereby authorized and directed to accrue the principal, interest, fees, expenses and other amounts described in the DIP Financing Documents and pay such amounts when they become due without need to obtain further Court approval, all to the extent provided in the DIP Financing Documents.  Upon payment, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable.   All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or

-10-

otherwise, will be deposited and applied as required by this Final Order and the DIP Financing Documents.

4.    _Authorization to Borrow._  Until the earlier of (a) the Maturity Date (as defined in the DIP Agreement), (b) an unfavorable decision in the Trade Case (as determined in the sole and reasonable discretion of DIP Agent after consultation with the Debtor, Mayer Brown LLP (Trade Case counsel to the Debtor), and the Statutory Committee), and (c) the termination of obligations under the DIP Financing Documents by the DIP Agent upon the occurrence and during the continuation of an Event of Default (as defined herein) (such earlier date, the "Termination Date"), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Financing Documents, DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request extensions of credit under the DIP Facility (in the form of loans) of up to an aggregate principal amount not to exceed $5,200,000.00 at any one time outstanding.

5.    _DIP Loan Outstandings._  The DIP Financing Documents and this Final Order shall constitute and evidence the validity and binding effect of the DIP Loan Outstandings, which DIP Loan Outstandings shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Case").  Upon entry of this Final Order, the DIP Loan Outstandings will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Agent or DIP Lenders under the DIP Financing Documents or this Final Order, including, without limitation, all principal,

-11-

accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Financing Documents. The DIP Loan Outstandings shall be due and payable, without notice or demand, on the Termination Date, except as provided in paragraph 22 herein.

6. <u>DIP Liens and DIP Collateral</u>. Effective immediately upon the execution of this Final Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent is hereby granted, for the benefit of itself and the DIP Lenders, continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens on (the "<u>DIP Liens</u>") any and all presently owned and hereafter acquired personal property, real property and other assets of the Debtor, whether owned or consigned by or to, or leased from or to the Debtor, including, without limitation, the following (collectively, the "<u>DIP Collateral</u>"): all (i) property of the Debtor; (ii) all proceeds and products of the foregoing; and (iii) the Trade Case, and all proceeds of (i) through (iii) (subject to the limitations set forward below in this paragraph). Notwithstanding the foregoing, the DIP Collateral shall not include claims under chapter 5 of the Bankruptcy Code or the proceeds thereof, including without limitation avoidance actions, and commercial tort claims or the proceeds thereof (the "<u>Carved-Out Claims and Proceeds</u>").

7. <u>DOE Funded Equipment</u>. Real property, personal property, intellectual property, equipment, rights of setoff and the respective proceeds thereof (altogether, the "<u>Funded Property</u>") acquired as a result of United States Department of Energy ("<u>DOE</u>") funding pursuant to agreements between the Debtor and the DOE, including but not limited to Assistance Agreement DE-EE0006354 and Assistance Agreement DE-EE0006815, as subsequently amended, are expressly excluded from the DIP Collateral, and the DIP Liens shall not encumber the Funded Property. The rights of the United States relating to its interests in the Funded

-12-

Property ("DOE Interests"), including the right to assert the position that such interests are not property of the estate, are fully preserved. Nothing herein shall constitute a finding of fact or conclusion of law with respect to the DOE's Interests in the Funded Property in relation to the asserted liens of the DIP Lenders or any other lienholders; such determination is expressly reserved to a later date.

8.    DIP Lien Priority.    The DIP Liens securing the DIP Loan Outstandings shall be junior in payment and priority to the (a) Carve Out, and (b) properly perfected liens of the Prepetition Lender, Wanxiang, and any other properly perfected prior liens, as well as any valid, non-avoidable lien that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or Successor Case. Upon entry of this Final Order, the DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

9.    DIP Superpriority Claims.    Immediately upon entry of this Final Order, the DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Case and any Successor Case

(collectively, the "DIP Superpriority Claims") for all DIP Loan Outstandings.    The DIP Superpriority Claims are subordinate in payment and priority to the Carve Out, and except as set forth herein shall (a) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtor or its estate in the Case and any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), (upon entry of this Final Order) 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and the Bankruptcy Code, and any other provision of the Bankruptcy Code, and (b) at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law. In the event Wanxiang has a 507(b) claim because it was denied access to its collateral and the collateral loses value during the case, its claim will have the same priority as any DIP Superpriority Claim. The DIP Superpriority Claims shall not extend to or be payable from the Carved-Out Claims and Proceeds, provided, that, the DIP Superpriority Claims shall extend to and be payable from 20% of the net proceeds of commercial tort claims.

10.    Warrants, Trade Case Success Fee, and Other Fees.  In consideration for the funds advanced under the DIP Facility to file and prosecute the Trade Case, DIP Agent and DIP Lenders are hereby granted, upon entry of this Final Order: (a) warrants representing no less than forty percent (40%) of the outstanding shares of the Borrower prior to a confirmed plan of reorganization under the Bankruptcy Code on a fully diluted basis, provided, however, (i) such percentage shall be increased to seventy-five percent (75%) after further notice, hearing and order of the Court, and (ii) unless the warrants are exercised prior to confirmation, the Debtor or Committee shall not propose a plan of reorganization under the Bankruptcy Code that provides

IMPAC 5196932v.1

for such percentage to be less than seventy-five percent (75%) of the reorganized Borrower on a fully diluted basis, in form and substance reasonably acceptable to DIP Agent (the "Warrants"), provided, that, (A) the Warrants or their exercise shall not and shall not be permitted to cause any dilution of a 100% recovery on account of general unsecured claims, regardless whether such recovery on unsecured claims comes in the form of cash or securities or a combination thereof or other form of payment, and, further, (B) the Warrants or their exercise, for the avoidance of doubt, shall not confer upon the DIP Agent or DIP Lenders any rights to elect members of the Debtor's board of directors, otherwise exert control over the Debtor, or amend the Debtor's governing documents such as by-laws and (C) the Debtor's Chief Restructuring Officer is authorized to execute on behalf of the Debtor any warrant agreement consistent with the terms herein and take all actions necessary to consummate the transactions contemplated in any warrant agreement consistent with the terms herein, and, (b) if a successful determination in the Trade Case is made in favor of the Borrower, then a fee in the amount equal to sixty percent (60%) of the increase in the value of the stock and other equity interests of the Borrower resulting from such successful determination of the Trade Case will be payable (in cash or equity) upon the later of (x) the effective date of a Plan and (y) ten (10) days after the Court's entry of a final order determining the amount of such fee (such later date, the "Subject Payment Date"). For the avoidance of doubt, (i) the Trade Case Success Fee shall be measured by the difference between (to the extent a positive number) (a) the value of the stock and other equity interests of the Borrower on the Petition Date and (b) the value of the stock and other equity interests of the Borrower on the Business Day immediately prior to the date of confirmation of a Plan, and (ii) the Trade Case Success Fee shall only be payable if there is a 100% recovery on account of general unsecured claims in cash or securities or a combination thereof, after taking

IMPAC 5196932v.1

into account the payment in cash or equity of the Trade Case Success Fee. Once the Trade Case Success Fee is determined, it shall rank pari passu with general unsecured claims and shall be distributed to the DIP Lenders as provided for in the DIP Financing Documents.

11.    No Obligation to Extend Credit. Neither the DIP Agent nor the DIP Lenders shall have any obligation to make any loan or advance under the DIP Financing Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Financing Documents and this Final Order have been satisfied in full or waived by the DIP Agent and the DIP Lenders, each in their sole and reasonable discretion. Otherwise, however, the DIP Agent and DIP Lenders shall make, and are directed to make, advances in accordance with the Budget and the DIP Financing Documents no less frequently than on a weekly basis two business days after receipt of a written draw request from the Debtor, including without limitation to fund professional fees to be funded into a segregated account ("Professional Fee Escrow") irrespective of whether such fees are approved by the Court or payable pursuant to any interim compensation procedures order entered by the Court.

12.    Use of DIP Facility Proceeds; Payment of Prepetition Obligations. From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Financing Documents and in compliance with the Budget, a copy of which is attached to this Final Order as Exhibit B. Notwithstanding any first-day orders entered authorizing the Debtor to pay any prepetition or other expenses, all such payments shall be made in accordance with the Budget.

13.    Amendment of the DIP Financing Documents. The DIP Financing Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (i) the amendment, modification, or supplement is (a) in accordance with

the DIP Financing Documents, (b) beneficial to the Debtor, and (c) not prejudicial in any material respect to the rights of third parties; (ii) a copy (which may be provided through electronic mail or facsimile) of the proposed amendment, modification or supplement is provided to counsel for the Statutory Committee and the U.S. Trustee at least five (5) business days prior to the proposed effective date of such amendment, modification or supplement; and (iii) the amendment, modification or supplement is filed with the Court.  The consent of the Statutory Committee or the U.S. Trustee, and approval of the Court is not necessary to effectuate any such amendment, modification or supplement; provided, however, that in the event the Statutory Committee or the U.S. Trustee file a written objection to such amendment, modification or supplement with this Court within such five (5) business day period, the proposed amendment, modification or supplement shall be subject to the approval of this Court, and further provided that the Statutory Committee and U.S. Trustee may waive in writing their right to object to any proposed amendment, modification or supplement otherwise satisfying (i)-(iii) above, thereby resulting in that proposed amendment, modification or supplement being deemed effective without the passing of such five (5) business day period.  Except as otherwise provided in this paragraph 13, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the Debtor and with the necessary consents required under and executed in accordance with the DIP Financing Documents, and approved by the Court on notice.

14.    Budget.  Attached hereto as Exhibit B are a thirteen week (13) budget for the period from April 17, 2017 through and including July 17, 2017 (the "13 Week Budget") and a twenty-six (26) week budget for professional fees (together with the 13 Week Budget, the "Budget") for the period from April 17, 2017 through and including October 15, 2017, which has

IMPAC 5196932v.1

been consented to by the DIP Agent.  The Budget reflects, on a line-item basis, anticipated cash

receipts and expenditures on a weekly basis and includes all necessary and required expenses

that the Debtor expects to incur during each month of the Budget.    The Debtor shall be

authorized to use the proceeds of the DIP Facility only for payment of such items as are set forth

in the Budget and subject to the terms and conditions set forth in the DIP Agreement and this

Final Order.  The Budget may be revised by the end of each month to reflect any developments

in the Case, and shall remain subject to the consent of the Debtor and the DIP Agent each month.

Not later than the second (2nd) business day of each week commencing with the second (2nd)

week of the period covered by the Budget, the Debtor shall provide the DIP Agent with a

variance report reflecting, on a line-item basis, the actual cash disbursements and revenues for

the preceding week and the percentage variance (the "Variance Percent") of the aggregate actual

disbursements and revenues from the aggregated disbursements reflected in the Budget for that

period.  Any disbursement by the Debtor other than for budgeted amounts as set forth in the

Budget shall constitute an Event of Default in accordance with the provisions of this Order

unless the DIP Agent consents to those changes in writing; provided, however, that the Debtor

may make payments in excess of the total budgeted disbursements, and it shall not constitute an

Event of Default, so long as (i) the Variance Percent of the aggregate of all actual disbursements

for each week shall not exceed ten percent (10.0%) of the budgeted disbursements for that week;

and (ii) the Variance Percent of the aggregate of all actual disbursements for (a) the first two-

week period of the Budget, (b) the first three-week period of the Budget, and (c) any consecutive

four-week period shall not exceed ten percent (10.0%) of the aggregate of all budgeted

disbursements for such four-week period (subsections (i) and (ii) above are collectively, the

"Allowed Disbursement Variance").  For the avoidance of doubt, any amount included in the

IMPAC 5196932v.1

Budget that is not incurred or paid during a particular week shall be permitted to be carried over into subsequent or back to prior weeks of the Budget. Every two weeks, Aurora Management Partners shall provide DIP Lenders with detailed fee statements for the previous two weeks. The Lion Point DIP Lenders have agreed to and shall promptly pay to the Debtor $75,000 to offset the estate professional fees and expenses incurred in connection with the objection by Lion Point Capital, LP to the Motion. The application of the amount in the preceding sentence as to the fees and expenses of estate professionals and their impact on the Budget and commitment to loan under the DIP Facility will be subject to agreement with the DIP Agent.

15.    _Modification of Automatic Stay_.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens and DIP Superpriority Claims; (b) permit the Debtor to incur all liabilities and obligations under the DIP Financing Documents and this Final Order; (c) permit the Debtor to perform such other acts as are necessary to effectuate the terms of this Final Order; and (d) authorize the Debtor to accrue and pay the DIP Agent and DIP Lenders, payments made in accordance with the terms of this Final Order.

16.    _Perfection of DIP Liens_.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Agent and DIP Lenders, to the priorities granted herein. Notwithstanding the

-19-

foregoing, the DIP Agent is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Agent, all such financing statements, mortgages, notices and other documents as any of the DIP Agent and DIP Lenders, may reasonably request.  The DIP Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

17.    Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Documents at any time prior to the repayment in full of all DIP Loan Outstandings and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, then the net cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in the DIP Financing Documents.

18.    Maintenance of DIP Collateral.  Until the payment in full in cash of all DIP Loan Outstandings, and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, the Debtor shall insure the DIP Collateral as required under the DIP Facility.

IMPAC 5196932v.1

19.    <u>Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or the Debtor's property in which Wanxiang, Wells Fargo, or any other party have a first priority security interest, the disposition of which shall be subject to prior Bankruptcy Court approval if not sold in the ordinary course without the prior written consents as required under the DIP Financing Documents.

20.    <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Agreement (subject to any extensions or waivers as permitted under the DIP Financing Documents), or a default under the terms and conditions of this Final Order shall constitute an event of default under this Final Order, unless expressly waived in writing by the DIP Agent in accordance with the consents required in the DIP Financing Documents (collectively, the "<u>Events of Default</u>").

21.    <u>Rights and Remedies Upon Event of Default</u>.  Upon three (3) business days' written notice to the Debtor and the Statutory Committee of the occurrence of an Event(s) of Default and the occurrence of the Termination Date, and following the expiration of any applicable grace period,  (a) the DIP Agent, as directed by the DIP Lenders as provided in the DIP Financing Documents, may declare all DIP Loan Outstandings owing under the DIP Financing Documents to be immediately due and payable, (ii) any further commitment of the DIP Lenders to extend credit (to the Debtor to the extent any such commitment remains) may be terminated, restricted, or reduced, and (iii) the DIP Agreement and any other DIP Document shall be terminated as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Loan Outstandings. Any automatic stay otherwise applicable to the DIP Agent or DIP Lenders, is hereby modified so that the DIP Agent

and the DIP Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Financing Documents and this Final Order and shall be permitted to satisfy the DIP Loan Outstandings and DIP Superpriority Claims, subject to the Carve Out; provided, however, that the DIP Agent and the DIP Lenders shall not be entitled to exercise any remedies with respect to the DIP Collateral until five (5) business days after the Termination Date.  Notwithstanding anything to the contrary, the Debtor and the Statutory Committee shall be entitled to seek an emergency hearing with the Court with respect to any or all of the foregoing.  Unless the Court orders otherwise, the automatic stay shall automatically be terminated at the end without further notice or order, and the DIP Agent and the DIP Lenders, shall be permitted to exercise all remedies set forth herein, in the DIP Agreement, the DIP Financing Documents, as applicable, and as otherwise available at law against the DIP Collateral, without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent and DIP Lenders with respect thereto pursuant to the DIP Agreement, DIP Financing Documents, or this Final Order.  Notwithstanding anything to the contrary in this Final DIP Order, the right of the DIP Agent or the DIP Lenders to occupy and/or use any leased premises shall be limited to any rights:    (a) existing under applicable non-bankruptcy law; (b) consented to, in writing, by the applicable landlord(s); and/or (c) granted by the Court on motion and notice, and with an opportunity for the landlords to respond.  In the event the DIP Lenders obtain relief from the automatic stay to foreclose on DIP Collateral, Wanxiang will at the same time have any stay relief necessary to protect its interest in any DIP Collateral upon which the DIP Lenders obtain stay relief to foreclose.

IMPAC 5196932v.1

22.     <u>Right to Credit Bid</u>.  Upon entry of this Final Order, the DIP Agent (as well as each DIP Lender, separately) shall have the right to "credit bid" the amount of the DIP Loan Outstandings as of the date of such bid during any sale of all or substantially all of the Debtor's assets to the extent it includes the sale of any DIP Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

23.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  Through the date hereof, the DIP Agent and DIP Lenders each have acted in good faith in connection with negotiating the DIP Financing Documents, extending credit under the DIP Facility, and their reliance on this Final Order is in good faith.  Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and DIP Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code.

24.     <u>Indemnification of DIP Agent and DIP Lenders</u>.  The Debtor shall indemnify and hold harmless the DIP Agent and each DIP Lender, solely in their capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Financing Documents, or the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is

-23-

party thereto, as provided in and pursuant to the terms of the DIP Financing Documents and as further described therein and herein, provided that the Debtor shall not have any obligation to indemnify and hold harmless any indemnified party under this paragraph with respect to any matter resulting from (a) such indemnified party's fraud, gross negligence, or willful misconduct or (b) violations by such indemnified party of this Final Order, or from breaches by such indemnified party of the DIP Financing Documents, in each case as determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's and each DIP Lender's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, the DIP Agent and each DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel. All fees and expenses of professionals of the DIP Agent and DIP Lenders to be paid by the Debtor under this Final Order or the DIP Agreement shall be on prior ten (10) day notice to the U.S. Trustee and the Statutory Committee and subject to objections as to the reasonableness of such fees or expenses.

25.    Reporting Requirements. Subject to any extensions or waivers as permitted under the DIP Financing Documents and this Final Order, the Debtor shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the DIP Financing Documents.

26.    Rights of Access and Information. Without limiting the rights of access and information afforded to the DIP Agent and DIP Lenders under the DIP Financing Documents, the Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtor's premises and its books and

-24-

records in accordance with the DIP Financing Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtor authorizes its independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition the Borrower. Further, the Debtor's special counsel, which is pursuing the Trade Case, shall provide the DIP Agent and DIP Lenders with a written status report of the litigation relating thereto every two weeks, subject to applicable privileges and subject to the confidentiality provisions in the DIP Agreement, with a contemporaneous copy to Debtor's and the Statutory Committee's bankruptcy counsel.

27.    Carve Out.

(a)    *Carve Out*. As used in this Final Order, the "Carve Out" shall encompass the following fees and expenses: (a) following the occurrence of a Triggering Event, (i) allowed fees, and reimbursement for disbursements of professionals retained by the Debtor (the "Debtor's Professional Fee Payments") and the allowed fees and reimbursements for disbursements of professionals retained by the Statutory Committee (the "Committee's Professional Fee Payments," and together with the Debtor's Professional Fee Payments, the "Estate's Professional Fee Payments") accrued in an aggregate amount for all the Estate's Professional Fee Payments not to exceed $150,000 (the "Carve Out Amount"), provided, that, the Carve Out Amount shall be paid first out of excess funds (determined after application of amounts in accordance with subparagraph (b) below), if any, in the Professional Fees Escrow; (ii) quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court; and (iii) fees payable to a chapter 7 trustee in an aggregate amount not to

IMPAC 5196932v.1

exceed $10,000 and (b) without reducing the Carve Out Amount, all Debtor's Professional Fee Payments and Committee's Professional Fee Payments incurred at any time before or on the date of the Triggering Event (the "Pipeline Period"), whether such amounts are allowed by the Bankruptcy Court prior to or after delivery of notice of a Triggering Event (and including amounts incurred but not invoiced prior to the delivery of notice of a Triggering Event);. As used in this paragraph 27(a), the term "Triggering Event" shall mean the date the DIP Agent provides to the Debtor and the Statutory Committee, with a copy to Debtor's and Statutory Committee's counsel, a notice of (i) an Event of Default and (ii) termination of the Pipeline Period for purposes of the Carve Out. As used in this paragraph 27(a), the term "Triggering Event" shall also mean the Debtor's failure to pay all quarterly fees owed pursuant to 28 U.S.C. § 1930(a)(6) and interest due thereon pursuant to 31 U.S.C. § 3717 (collectively, the "Chapter 11 Quarterly Fees") until such time as a final decree is entered by the Court or the Court enters an ordering converting or dismissing the Debtor's Case. The properly perfected liens of the Prepetition Lender and Prepetition Agent,the DIP Liens, and the DIP Superpriority Claims shall be junior in payment and priority to the Carve Out.

(b)     *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The DIP Agent and DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtor and/or the Statutory Committee incurred in connection with this Case or any Successor Case. Until the occurrence of a Triggering Event, the allowed Debtor's Professional Fee Payments and Committee's Professional Fee Payments shall be paid in accordance with the Budget. Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Agent or DIP Lenders, in any way to pay compensation to or to reimburse expenses of any professionals retained by the

-26-

Debtor and/or the Statutory Committee, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out Amount if actual Debtor's Professional Fee Payments and Committee's Professional Fee Payments incurred after a Triggering Event exceed the Carve Out Amount; or (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtor and/or the Statutory Committee.

28. _Limitations on the DIP Facility, DIP Collateral, and Carve Out._ The DIP Facility, DIP Collateral, and Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lender, or their rights and remedies under the DIP Financing Documents, Prepetition Credit Documents, or this Final Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or the Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Loan Outstandings or Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against any DIP Agent, DIP Lender, Prepetition Agent, or Prepetition Lender, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent or any DIP Lender of any rights and/or remedies under this Final Order, the DIP Financing Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent or DIP Lenders upon any of the DIP Collateral

-27-

(except as provided for in paragraph 21); (b) to make any distribution under a plan of

reorganization in the Case; (c) to make any payment in settlement of any claim, action or

proceeding, before any court, arbitrator or other governmental body without the prior written

consents required of DIP Lenders or under the DIP Financing Documents; (d) to pay any fees or

similar amounts to any person who has proposed or may propose to purchase interests in the

Debtor without the prior written consents of DIP Lenders or required under the DIP Financing

Documents, (e) to object to, contest, or interfere with in any way the DIP Agent's or DIP

Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has

occurred (except as provided for in paragraph 21); (f) to use or seek to use any insurance

proceeds constituting DIP Collateral without the consents required under the DIP Financing

Documents; (g) to incur Debt (as defined in the DIP Agreement) outside the ordinary course of

business without the prior consents required under the DIP Financing Documents; (h) to object to

or challenge in any way the claims, liens, or interests (including interests in the Prepetition

Collateral or DIP Collateral) held by or on behalf of any DIP Agent, DIP Lender, Prepetition

Agent or Prepetition Lender; (i) to assert, commence or prosecute any claims or causes of action

whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code,

against any DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender; (j) to prosecute an

objection to, contest in any manner, or raise any defenses to, the validity, extent, amount,

perfection, priority, or enforceability of any of the Prepetition Obligations, Prepetition Liens,

DIP Loan Outstandings or DIP Liens or any other rights or interests of any of the Prepetition

Agent or Prepetition Lender, DIP Agent or DIP Lenders; or (k) to prevent (or attempt to

prevent), hinder or otherwise delay the exercise by DIP Agent, DIP Lenders, Prepetition Agent

or Prepetition Lender of any rights and remedies granted under this Final Order, _provided_ that

IMPAC 5196932v.1

nothing in this paragraph 28 shall prohibit the Debtor or the Statutory Committee from seeking to enforce the terms of this Final Order.  Notwithstanding any of the foregoing, the Statutory Committee may use up to $15,000 of the proceeds of the DIP Facility to investigate the claims and liens of the Prepetition Agent or Prepetition Lender or investigate any claims or defenses or other causes of action against the Prepetition Agent or Prepetition Lender.  Nothing herein shall be deemed to (a) limit the ability of the Statutory Committee's professionals to seek approval from the Court to be paid from unencumbered assets, if any, for services rendered in the investigation or prosecution of claims against the Prepetition Agent or Prepetition Lender; (b) preclude the Court from awarding fees and expenses to Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtor or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of any plan.

29.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

30.    <u>No Deemed Control</u>.  In making decisions to advance any extensions of credit under the DIP Facility, or in taking any other actions related to this Final Order or the DIP Financing Documents (including, without limitation, the exercise of its approval rights with respect to any budget), DIP Agent and DIP Lenders shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtor or to be acting as "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability

-29-

Act as amended, or any similar federal or state statute), and DIP Agent's and DIP Lenders' relationship with Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind.

31.    Section 506(c) Claims.  Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Case or any Successor Case at any time shall be charged against the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lender, or any of their respective claims or the DIP Collateral or Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

32.    No Marshaling/Applications of Proceeds.  Upon entry of this Final Order, the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the DIP Financing Documents.

33.    Section 552(b).  Upon entry of this Final Order, the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of them with respect to proceeds, product, offspring or profits of any of their respective collateral.

34.    Discharge Waiver.  Upon entry of this Final Order, the Debtor expressly stipulates, and the Court finds and adjudicates that, the DIP Loan Outstandings shall not be

-30-

discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Loan Outstandings have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. Unless otherwise agreed to by the DIP Agent and DIP Lenders, an Event of Default hereunder shall occur if the Debtor proposes or supports any plan of reorganization or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, of all DIP Loan Outstandings and the cancellation, backing, or cash collateralization of all letters of credit issued under the DIP Financing Documents.

35.    <u>Rights Preserved</u>.    Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lender are preserved.

36.    <u>No Waiver by Failure to Seek Relief</u>.    The failure of any DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Financing Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

37.    <u>Binding Effect of Final Order</u>.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lender, all other creditors of the Debtor, the Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other

-31-

IMPAC 5196932v.1

fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or Successor Case.

38.    No Modification of Final Order.    An Event of Default hereunder shall occur if, until and unless the DIP Loan Outstandings and Prepetition Obligations (to the extent any Prepetition Obligations remain outstanding) have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility have been terminated, the Debtor seeks or consents to, directly or indirectly:    (a) without the prior written consents required in the DIP Financing Documents, (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the DIP Superpriority Claims, other than the Carve Out; and (b) without the prior written consents required under the DIP Financing Documents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.    An Event of Default shall occur if the Debtor seeks any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the applicable DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender.

39.    Final Order Controls.    In the event of any inconsistency between the terms and conditions of the DIP Financing Documents or this Final Order, the provisions of this Final Order shall govern and control.

IMPAC 5196932v.1

40.    Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing of the Case or Successor Case.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent and DIP Lenders, pursuant to this Final Order and/or the DIP Financing Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Loan Outstandings have been indefeasibly paid in full. The terms and provisions concerning the indemnification of the DIP Agent and/or DIP Lenders shall continue in this Case, in any Successor Cases, following dismissal of this Case or any Successor Case, following termination of the DIP Financing Documents and/or the repayment of the DIP Loan Outstandings.

41.    Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

42.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

43.    <u>Immediate Effectiveness</u>.  Notwithstanding Bankruptcy Rules 6003 and 6004 or

any other Bankruptcy Rule, this Final Order shall be immediately effective and enforceable upon

its entry and there shall be no stay of execution or effectiveness of this Final Order.


Dated: May 19 , 2017
       Wilmington, Delaware

                                    THE HONORABLE KEVIN GROSS
                                    UNITED STATES BANKRUPTCY JUDGE

IMPAC 5196932v.1