# Exhibit C



**SQN ASSET SERVICING, LLC**

August 6, 2018

VIA E-MAIL (dbaker@auroramp.com) and Regular Mail

Mr. David M. Baker
Chief Restructuring Officer of
Suniva, Inc., Debtor-in-Possession
Aurora Management Partners
112 South Tryon Street
Suite 1770
Charlotte, NC 28284

  Re: Suniva, Inc. – AD/CVD Settlement

Dear Dave,

  As you are well aware and the record before Judge Gross reflects, SQN Asset Servicing, LLC believes that the removal of the SQN and Wanxiang manufacturing equipment ("Norcross Manufacturing Equipment") from the Norcross, GA manufacturing facility will harm the estate's standing and participation in a potential settlement for the benefit of solar cell manufacturers in the AD/CVD matter. SQN is highly motivated for a positive outcome in a settlement for the Estate as SQN is the majority DIP Lender and the largest unsecured creditor with over $55mm invested in Suniva. SQN's belief that removing the equipment will hurt the Estate is based on conversations with Mayer Brown, Matt Card, and other people in the industry. Accordingly, SQN requests that the Norcross Manufacturing Equipment is not removed from the Norcross facility without the consent of SQN. As you are also aware, SQN is willing to work with the Estate to best position it for a beneficial outcome in any AD/CVD settlement including sharing certain expenses for the Norcross facility as part of an amendment to the SQN DIP facility and Lion Point funding Stipulation and Order entered Wednesday, July 25, 2018.

  Further, as I am sure your counsel advised you, SQN credit bid and purchased the Debtor's Trademarks at the May 24, 2018 public Uniform Commercial Code sale, which included the name "Suniva." Although SQN has the right to demand that you cease and desist from the use of the name Suniva, SQN has chosen not to do so at this time as we believe it supports an AD/CVD settlement, similar to maintaining the Manufacturing Equipment at the Norcross facility.

  In a good faith effort to work together we formally offer to fund up to $80,692 per month from August through January as we outlined and communicated to you via email on Wednesday, July 25, 2018. As specified in that email content, these funds can be used for necessary payments of rent, utilities, specific payroll, waste water treatment costs and certain insurance. These funds would be provided through the SQN DIP facility already in place and be covered by the terms and condition of such DIP financing. In addition we would continue to allow the Estate to use the name "Suniva".

SQN reserves, and does not waive any rights or remedies otherwise relating to actions taken relating to the Manufacturing Equipment, including without limitation asserting administrative claims in the estate relating thereto, and any actions or inactions by SQN relating to the Manufacturing Equipment shall not affect this reservation of rights.

We cannot stress enough that SQN believes that it is aligned with the Estate as it sits at the top of the waterfall for any proceeds received from an AD/CVD settlement, plan of reorganization, or otherwise. The effort that SQN has put in to date is undeniable from providing the initial DIP loan to avoid Chapter 7 to personal sacrifices and hundreds of hours fighting the 201 Case on behalf of Suniva.

SQN strongly urges a conference call directly with Mayer Brown which includes SQN and counsel for the Unsecured Creditors Committee so that you are operating with the same set of information with which SQN bases its strong conviction that removing the equipment will irreparably damage the chances of Suniva receiving distribution under any AD/CVD settlement.

We are operating under the assumption that Lion Point has provided confidence to the Estate and Unsecured Creditors that there is the potential for an AD/CVD settlement in the relatively near-term and that this was the justification for the Estate and the Unsecured Creditors supporting the Lion Point funding Stipulation and Order entered Wednesday, July 25, 2018. In the event that this is not the case and, instead, a plan of reorganization is being considered, SQN as the largest creditor and majority DIP lender would also be interested in supporting such an arrangement which would unquestionably benefit from the Norcross Manufacturing Equipment staying in-place.

If the plan is neither to pursue the AD/CVD Settlement nor enter into a plan of reorganization, we do not see how requesting that SQN remove the equipment benefits the Estate in anyway. On the contrary, it actually damages another major creditor in that SQN has repeatedly expressed interest in assuming the lease for the Norcross facility directly. Forcing SQN to remove the equipment rather than assuming the lease, leaves the landlord without a tenant and with a substantial expense, measured in the millions of dollars.

Please call to discuss further if you have any questions.

Very truly yours,

Jeremiah Silkowski
President

cc: Todd C. Meyers, Esq. (via e-mail)
Colin Bernardino, Esq. (via e-mail)
Sean A. O'Neal, Esq. (via e-mail)
John R. Ashmead, Esq. (via e-mail)
Robert J. Gayda, Esq. (via e-mail)
Douglas J. Lipke, Esq. (via e-mail)
David B. Stratton, Esq. (via e-mail)