IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SUNIVA, INC.,<br><br>                       Debtor. | Chapter 11<br><br>Case No. 17-10837(KG) |
| SQN ASSET SERVICING, LLC<br><br>                       Plaintiff,<br>v.<br><br>SUNIVA, INC. and LION POINT CAPITAL, LP,<br><br>                       Defendants. | Adversary Proceeding No. 18-____ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR EMERGENCY AND PRELIMINARY INJUNCTIVE RELIEF**

# **TABLE OF CONTENTS**

Page

NATURE OF THE PROCEEDINGS ........................................................................................... 1

SUMMARY OF THE ARGUMENT .............................................................................................. 1

STATEMENT OF FACTS ............................................................................................................ 3

ARGUMENT ................................................................................................................................ 7

    A.    SQN is Likely to Succeed on the Merits of its Claim ............................................ 9

    B.    SQN Will Suffer Irreparable Injury Without the Injunction ................................. 10

    C.    The Balance of Harms Weighs Heavily in Favor of Issuing Injunctive Relief ..................................................................................................................... 10

    D.    Granting SQN Injunctive Relief Will Serve the Public Interest .......................... 11

CONCLUSION .......................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Baldwin-United Corp.*,
  57 B.R. 759 (S.D. Ohio 1985) ................................................................................................8

*In re Broadstripe, LLC*,
  402 B.R. 646 (Bankr. D. Del. 2009) ................................................................................ *passim*

*Doe v. Pennsylvania State Univ.*,
  No. 17-CV-1315, 2017 WL 3581672 (M.D. Pa. Aug. 18, 2017) .............................................8

*In re Eagles-Picher Indus.*,
  963 F.2d 855 (6th Cir. 1992) ...................................................................................................8

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) .....................................................................................................8

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017)..................................................................................................8, 9

*Tootsie Roll Indus., Inc. v. Sathers, Inc.*,
  666 F. Supp. 655 (D. Del. 1987).............................................................................................9

*Video Pipeline, Inc. v. Buena Vista Home Ent'mt, Inc.*,
  342 F.3d 191 (3d Cir. 2003)....................................................................................................8

**Statutes**

Bankruptcy Code Section 105(a) ....................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 65 ................................................................................................8

Federal Rules of Bankruptcy Procedure Rule 7065........................................................................7

## NATURE OF THE PROCEEDINGS

Plaintiff SQN Asset Servicing, LLC ("SQN") brings its a Motion for Emergency and Preliminary Injunctive Relief against Defendants Suniva, Inc. (the "Debtor") and Lion Point Capital, LP ("Lion Point") for entry of a temporary restraining order and preliminary injunction against the Debtor and Lion Point prohibiting them from removing, directly or indirectly, SQN's solar cell production line equipment from the facilities leased by the Debtor in Norcross, Georgia (the "Norcross Facility"). The removal of SQN's solar cell production line equipment from the Norcross Facility will not benefit the Debtor's estate. On the contrary, the removal of SQN's solar cell production line equipment from the Norcross Facility will be detrimental to the Debtor's estate and the Debtor's creditors.

## SUMMARY OF THE ARGUMENT

1. SQN is the largest unsecured creditor to the Debtor's estate with a claim of approximately $33,750,000. SQN provided debtor-in-possession financing to Defendant Suniva, Inc. (the "Debtor") from April 17, 2017—the date on which the Debtor filed the above-captioned voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code")—through May, 2018 (the "SQN DIP Financing"), and currently owns certain solar cell production line equipment located at the Debtor's Norcross Facility.

2. SQN brings its Motion for Emergency and Preliminary Injunctive Relief ("Motion") to enjoin the Debtor and Defendant Lion Point Capital, LP ("Lion Point") from removing, directly or indirectly, SQN's solar cell production line equipment from the Norcross Facility. Specifically, on August 2, 2018, the Debtor demanded that SQN remove all of its solar cell production line equipment from the Norcross Facility within fourteen (14) days, or on or before August 16, 2018. If SQN refuses, then the Debtor will file a forcible eviction proceeding against SQN in Georgia state court.

3.      The removal of SQN's solar cell production line equipment from the Norcross Facility, however, will irreparably harm the Debtor's estate and Debtor's creditors including SQN and jeopardize any potential recovery the Debtor may have from its most significant asset, namely, the anti-dumping countervailing duty ("AD/CVD") settlement, which the Debtor has, until now, pursued with the aid of the SQN DIP Financing and with SQN's express consent. The Debtor's ability to obtain the AD/CVD settlement proceeds is directly linked to having the solar cell production line equipment remain at the Norcross Facility. Debtor has admitted as much in its filings with this Court.[1]

4.      Moreover, on information, SQN believes that Lion Point, which has provided funding to Debtor outside the Chapter 11 estate, seeks the removal of SQN's solar cell production line equipment for improper purposes, namely, to eliminate potential competition in the solar cell production industry and potentially to force SQN to sell the equipment on site at below fair market value. Lion Point's Form 13F filings with the United States Securities and Exchange Commission ("SEC") show that Lion Point owns approximately 1,920,085 shares in Canadian Solar—one of the three largest solar companies in the world by revenue—that are valued at approximately $31,239,000(US) and constitutes Lion Point's fifth largest equity holding. Lion Point also loaned approximately $14,341,000(US) to Canadian Solar.

5.      Accordingly, to protect the Debtor's estate, Debtor's creditors and fair competition in the solar industry, SQN requests that the Court temporarily and preliminary enjoin the Debtor and Lion Point from removing, directly or indirectly, SQN's solar cell production line equipment from the Norcross Facility.

---

[1] *See* Debtor's July 24, 2018 Reply Motion for Entry of an Order (i) Approving the Stipulation Regarding Norcross, Georgia Lease and (ii) Extending Debtor's Time, with Consent, to Assume or Reject Norcross, Georgia Lease [Doc. 794] at 6, n. 9.).

## STATEMENT OF FACTS

The salient facts giving rise to SQN's Motion are simple and straight-forward. On April 17, 2017 (the "Petition Date"), Debtor filed the above-captioned voluntary petition for relief under the Bankruptcy Code. (SQN's Verified Adversary Complaint ("Compl.") ¶ 10, a true and correct copy of which is attached hereto as Exhibit 1.) Debtor continues to operate its business and manage its properties as a debtor-in-possession as authorized by Sections 1107(a) and 1108 of the Bankruptcy Code. (*Id.*)

This Court has jurisdiction of this adversary proceeding pursuant to Title 28, Sections 157 and 1334 of the United States Code. (*Id.* ¶ 11.) This proceeding is a core proceeding pursuant to Title 28, Section 157(b) of the United States Code, and venue is proper in this Court pursuant to Title 28, Sections 1408 and 1409 of the United States Code. (*Id.* ¶ 12–13.)

Debtor is in the business of, among other things, manufacturing and selling solar cells. (*Id.* ¶ 14.) Debtor is a party to a lease of the Norcross Facility, which is nonresidential real property located at 5765 and 5775 Peachtree Industrial Boulevard, Norcross, Georgia 30092. (*Id.*) Lion Point is private investment and advisory services company located in New York, New York. (*Id.* ¶ 15.) Lion Point provides debtor-in-possession financing to Debtor pursuant to a budget through December 2018 ("Lion Point DIP Financing"). (*Id.*) Lion Point also provided funding of approximately $500,000 outside the Chapter 11 estate to the Landlord of the Norcross Facility for rent through January, 2019 (the "Lion Point Norcross Funding"). (*Id.*)

SQN is the largest unsecured creditor to the Debtor's estate with a claim of approximately $33,750,000. (*Id.* ¶ 16.) SQN provided the Debtor the SQN DIP Financing from the Petition Date through May, 2018, and currently owns certain solar cell production line equipment located at the Norcross Facility. (*Id.*) Since the commencement of this case, SQN alone advanced approximately $5,280,000 to Debtor through the SQN DIP Financing. (*Id.* ¶ 17.)

The SQN DIP Financing funded the Debtor's successful trade petition before the U.S. International Trade Commission (filed April 26, 2017, the "Trade Case"), professional fees, payroll, rent, utilities and other administrative expenses through May 20, 2018. (*Id.* ¶ 18.)

The SQN DIP Financing concluded due to certain Events of Default by the Debtor and the expiration of the term. (*Id.* ¶ 19.) By Agreed Orders entered on April 17 and May 3, 2018 SQN and Wanxiang American Corporation ("Wanxiang") were authorized, with the consent of the Debtor, Lion Point and the Committee of Unsecured Creditors (the "Committee"), to advertise and hold public Uniform Commercial Code Sales to be held on May 24, 2018, for the solar cell production line equipment located at the Norcross Facility. (*Id.* ¶ 20.) SQN and Wanxiang credit bid for their respective solar cell production line equipment, the accountings for which were served on the Debtor and Committee. (*Id.* ¶ 21.)

After adjusting for the credit bid, SQN became the largest unsecured creditor to the Debtor's estate with a claim of approximately $33,750,000. (*Id.* ¶¶ 16, 22.) At the same time, Wanxiang became the second largest creditor to the Debtor's estate with a claim of approximately $12,500,000. (*Id.* ¶ 23.) Together, SQN's and Wanxiang's unsecured claims are larger than the aggregate of all of the other unsecured creditors combined as reported on the Debtor's Schedules and Statement of Financial Affairs. (*Id.* ¶ 24.)

By Stipulation and Order dated May 3, 2018 the Court approved debtor-in-possession financing by Lion Point pursuant to a budget through December, 2018. (*Id.* ¶ 25.) The Lion Point Financing Stipulation entered into by the Debtor, Committee, Lion Point and SQN, specifically provides at Paragraph (b) that:

> The purpose of the LP Advances shall be (i) to fund expenses identified in the [Budget] including to accommodate and support attempts to reach an AD/CVD settlement, and (ii) … to fund … certain leases and lease-related expenses in Norcross, Georgia … for the months of June and/or July, 2018.

(*Id.* ¶ 26.)

The Motion of the Debtor to approve the Lion Point Norcross Funding specifically provides at Paragraph 4 that the funding "will give the Debtor significant additional time to work towards a . . . recovery of AD/CVD funds." (*Id.* ¶ 27.) Indeed, SQN was asked by Lion Point and the Debtor to waive its right under the SQN DIP Financing Order [Doc. 171 Para. 17] to receive 100% of the Lion Point DIP Financing. (*Id.* ¶ 28.) SQN consented to the Lion Point Financing Stipulation provided that such funds: (i) could not be used in any manner adverse to the interests of SQN and (ii) with the understanding that the solar cell production line equipment would stay in place and the production capacity stay intact as the Debtor pursued the AD/CVD settlement for the benefit of all creditors and to fulfill the interest of the United States government in restoring domestic production capacity in the United States. (*Id.*)

The purpose of any AD/CVD settlement is to compensate solar panel manufacturers damaged by the prior retaliatory actions of solar panel manufacturers located in China. (Declaration of James Modak ("<u>Modak Decl.</u>") ¶ 21, a true and correct copy of which is attached hereto as <u>Exhibit 2</u>.) The Office of the United State Trade Representative (the "<u>USTR</u>"), which oversees the AD/CVD settlement, has made clear that it will not award an AD/CVD settlement to a shell company that has no solar panel production capacity. (*Id.* ¶¶ 20, 22.)

On July 24, 2018, in support of the Debtor's Motion for Entry of an Order (i) Approving the Stipulation Regarding Norcross, Georgia Lease and (ii) Extending Debtor's Time, with Consent, to Assume or Reject Norcross, Georgia Lease, Debtor acknowledged that if it does not have, or cannot obtain in the future, equipment to restart production at the Norcross Facility, then the absence of such equipment would have a significant adverse effect on Debtor's ability to receive the AD/CVD settlement proceeds. (Compl. ¶ 29.) Nonetheless, approximately one (1)

week later on August 2, 2018, Debtor contacted SQN in writing and, contrary to Debtor's earlier positions with regard to the AD/CVD settlement proceeds and SQN's interests, demanded that SQN immediately remove its solar cell production line equipment from the Norcross Facility. (*Id.* ¶ 30.)  The Debtor also stated that, in the event that SQN does not remove its solar cell production line equipment from the Norcross Facility on or before August 16, 2018, Debtor would file forcible eviction proceedings against SQN. (*Id.* ¶ 30–31.)

The Debtor's demand that SQN immediately remove its solar cell production line equipment from the Norcross Facility will, by the Debtor's own admission, have a significant adverse effect on Debtor's ability to receive AD/CVD settlement proceeds, and irreparably harm Debtor's estate and Debtor's creditors including SQN. (*Id.* ¶ 34; Modak Decl. ¶¶ 20–24.)  The Debtor did not disclose, and has not disclosed, whether it has obtained or is in the process of obtaining equipment to restart production in the future. (Compl. ¶ 32.)

SQN does not believe that Debtor has obtained or is in the process of obtaining equipment to restart production in the future. (Compl. ¶ 33; Modak Decl. ¶ 27.)  The Debtor would require significant time to order, ship and install new solar cell production equipment similar to SQN's solar cell production equipment that is currently at the Norcross Facility. (Modak Decl. ¶¶ 25–26, 28.)  The cost to purchase and install such equipment would be between $25 million and $50 million and the installation of inferior equipment would be a sham. (*Id.* ¶¶ 26, 28.)

In addition to changing its position regarding the AD/CVD settlement not acting adversely to SQN interests, the Debtor recently received approximately $500,000 from Lion Point outside of the Chapter 11 estate. (Compl. ¶ 35.)  The Debtor's receipt of such funds raises

6

serious questions about whether the Debtor and Lion Point are acting (i) in the best interests of the Debtor's estate and (ii) in a manner adverse to the interests of SQN. (*Id.*)

To be sure, according to its SEC filings, Lion Point has approximately $31,000,000(US) of equity holdings in Canadian Solar—one of the three largest solar companies in the world by revenue—and loaned Canadian Solar an additional $14,000,000(US). (*Id.* ¶ 36.) Canadian Solar is Lion Point's fifth largest equity holding, thereby making Lion Point a direct competitor of the Debtor. (*Id.*) Lion Point has also invested approximately $10 million (US) in a Chinese solar company during the pendency of the Debtor's bankruptcy proceedings. (*Id.* ¶ 8, n.1.)

SQN offered in writing to pay certain expenses at the Norcross Facility in order to assure that its equipment remains at the Norcross Facility until January 31, 2019, but received no response. (*Id.* ¶ 37.) SQN believes that the Debtor, with the assistance of Lion Point, is attempting to force SQN into selling its solar cell production line equipment in a forced scenario, while placing (unnecessarily) the Debtor's ability to recover AD/CVD settlement proceeds at substantial and significant risk. (*Id.* ¶ 38.) The elimination of the Debtor as a competitor would directly benefit Canadian Solar and Lion Point. (*Id.* ¶ 39.)

## **ARGUMENT**

Section 105(a) of the Bankruptcy Code provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Section 105(a), and pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, the Court has the authority to issue temporary restraining orders and preliminary injunctions. *In re Broadstripe, LLC*, 402 B.R. 646, 655 (Bankr. D. Del. 2009). Temporary restraining orders and preliminary injunctions are governed by the well-known, four-factor inquiry:

7

> A party seeking a TRO or preliminary injunction must demonstrate: (i) a reasonable likelihood of success on the merits; (ii) a likelihood that it will suffer irreparable harm if relief is denied; (iii) that the nonmoving party will not suffer greater harm of the injunction is granted; and (iv) that the public interest favors such relief.

*Id.* (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) and *Video Pipeline, Inc. v. Buena Vista Home Ent'mt, Inc.*, 342 F.3d 191, 196 (3d Cir. 2003)).

"[T]he Third Circuit recently clarified the burden on a party seeking issuance of a preliminary injunction." *Doe v. Pennsylvania State Univ.*, No. 17-CV-1315, 2017 WL 3581672, at *5 (M.D. Pa. Aug. 18, 2017). Specifically, in *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017), the Third Circuit held that a party seeking preliminary equitable relief "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 179 (footnotes omitted). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

In bankruptcy proceedings, courts have modified the test by concluding that the four elements are factors to be balanced rather than prerequisites to be satisfied. *See, e.g.*, *In re Eagles-Picher Indus.*, 963 F.2d 855, 859 (6th Cir. 1992) (holding that "the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied."); *In re Baldwin-United Corp.*, 57 B.R. 759, 766 (S.D. Ohio 1985) (of the four factors, no single factor is "determinative as to the appropriateness of equitable relief").

Lastly, the standard for granting a temporary restraining order is the same as that for issuing a preliminary injunction. *In re Broadstripe*, 402 B.R. at 655. "The function of a

temporary restraining order is to preserve the status quo until there is an opportunity to hold a hearing on the application for preliminary injunction." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). Each of the four factors is analyzed seriatim below and favor SQN.

### A. SQN is Likely to Succeed on the Merits of its Claim

The first factor for the Court to consider on SQN's Motion is SQN's likelihood of success on the merits. *In re Broadstripe*, 402 B.R. at 655. To establish a likelihood of success on the merits, the Third Circuit "requires a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179.

SQN easily satisfies the likelihood of success on the merits factor. To be sure, the Debtor has already admitted in filings with this Court that the removal of SQN's solar cell production line equipment from the Norcross Facility without replacement would, in fact, have a significant adverse effect on Debtor's ability to recover AD/CVD settlement proceeds:

> For its part, the Debtor does not believe that the foreclosure or dispossession of the [solar cell production line] equipment has a *significant adverse effect* on the opportunity to receive AD/CVD settlement proceeds *as long as the Debtor has, or can obtain, equipment to restart production in the future*.

(Compl. ¶ 29 (citing [Doc. 794 at 6, n. 9)) (emphasis supplied).

Moreover, the Debtor has not informed SQN that it has purchased, or has any plans to purchase (now or in the near future), adequate solar cell production equipment to replace SQN's equipment, nor could the Debtor do so without a significant commitment in terms of time and funds. (*Id.* ¶ 32; Modak Decl. ¶¶ 25–26.) The Debtor would need (i) at least six (6) month to obtain new solar cell production equipment to replace SQN's equipment and (ii) between $25 and $50 million in funding. (Modak Decl. ¶¶ 25–26.)

9

Lastly, SQN is not aware of any used solar cell production equipment that Debtor could potentially use to replace SQN's equipment. (*Id.* ¶ 27.) Any attempt or offer by the Debtor to replace SQN's solar cell production equipment with inferior equipment would be considered disingenuous and a sham by the governmental organizations that are responsible for negotiating the AD/CVD settlement. (*Id.* ¶ 28.)

### B. SQN Will Suffer Irreparable Injury Without the Injunction

The second factor for the Court to consider on SQN's Motion is the irreparable injury that will be occasioned if an injunction prohibiting the removal of SQN's solar cell production line equipment from the Norcross Facility is not entered. *In re Broadstripe*, 402 B.R. at 655. SQN also easily satisfies the second factor.

The AD/CVD settlement represents a significant, if not the only, asset of the Debtor's estate that can be used to satisfy the claims against the Debtor's estate. (Compl. ¶ 48; Modak Decl. ¶ 13.) Removal of SQN's solar cell production line equipment will—as the Debtor admitted—have a significant adverse effect on the Debtor's ability to recover the AD/CVD settlement. (*Id.* ¶ 29; Modak Decl. ¶¶ 20–24.) Thus, allowing the Debtor and Lion Point to remove SQN's solar cell production line equipment would jeopardize, if not completely destroy, the estate's largest and only asset, and prevent SQN—the Debtor's largest unsecured creditor—and all other creditors from any relief or recovery. (Compl. ¶ 48; Modak Decl. ¶¶ 13, 20–24.)

### C. The Balance of Harms Weighs Heavily in Favor of Issuing Injunctive Relief

The third factor that the Court must consider in analyzing SQN's Motion is the balance of harms. *In re Broadstripe*, 402 B.R. at 655. This factor is, yet again, easily satisfied by SQN.

Here, the balance of harms weighs heavily in favor of this Court issuing an injunction preventing the removal of SQN's solar cell production line equipment from Norcross Facility because the issuance of an injunction would (i) ensure the Debtor's ability to recover the

AD/CVD settlement proceeds to the benefit the Debtor's estate and (ii) the Debtor's estate will not be adversely effected by an injunction. (Compl. ¶ 49.) Issuance of injunction is also consistent with the position that, until now, the Debtor has taken in this case, namely, to keep SQN's solar cell production line equipment at the Norcross Facility while negotiating for the AV/CVD settlement. (*Id.* ¶¶ 26–28, 49.)

On the other hand, the failure to issue an injunction places the Debtor's ability to recover the AD/CVD settlement proceeds at substantial risk which, if lost, would clearly be detrimental to the Debtor's estate and preclude Debtor's creditors, including SQN, from any recovery. (*Id.* ¶¶ 29, 34, 49; Modak Decl. ¶¶ 20–23.) Further, SQN has offered to pay the Debtor expenses (up to $80,692 per month, including insurance) to keep solar cell production line equipment at the Norcross Facility so that the Debtor can continue to negotiate in good faith for the AD/CVD settlement. (Compl. ¶ 37.)

### D.  Granting SQN Injunctive Relief Will Serve the Public Interest

The fourth and final factor for the Court to consider is whether the injunction will serve the public interest. *In re Broadstripe*, 402 B.R. at 655. This factor clearly favors SQN.

The public interest is clearly served by, among other things, preserving Debtor's ability to recover the AD/CVD settlement to benefit the Debtor's estate. *Id.* at 659 (holding that the public's interest is served where injunctive relief is designed to prevent injury to the Debtor's business value and reorganization efforts). The public interests is also served by preventing a direct competitor (Lion Point) from using these bankruptcy proceeding to potentially eliminate competition in the solar panel industry. *See id.* Lastly, the public interest is served by preventing the Debtor from taking inconsistent positions with respect to the AD/CVD settlement and the removal of SQN's solar cell production line equipment at the Norcross Facility.

**CONCLUSION**

SQN respectfully prays that this Court (i) enter a temporary restraining order and a preliminary injunction prohibiting the Debtor and Lion Point from removing or forcing SQN to remove SQN's solar cell production line equipment from the Norcross Facility and (ii) award SQN any further relief in its favor as may be appropriate under the circumstances including attorneys' fees and costs.

Dated: August 10, 2018
Wilmington, Delaware

**PEPPER HAMILTON LLP**

/s/ John H. Schanne
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: strattond@pepperlaw.com
fournierd@pepperlaw.com
schannej@pepperlaw.com

-AND -

Douglas J. Lipke (Admitted *pro hac vice*)
**VEDDER PRICE, P.C.**
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7646
Facsimile: (312) 609-5005
E-mail: dlipke@vedderprice.com

*Counsel to SQN Asset Servicing, LLC*